## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,     :

                      :

    v.               :     **3:16-cr-00373**

                      :     **(JUDGE MARIANI)**

CHARLES J. SENKE,         :

                      :

        Defendant.     :

FILED
SCRANTON

NOV 1 4 2023

Per_____

DEPUTY CLERK

### MEMORANDUM OPINION

### I. INTRODUCTION

On October 3, 2018, Charles J. Senke was found guilty by a jury of various crimes relating to sexual communications and attempted sexual activities with a minor. (Doc. 136.) Presently before the Court is Senke's *pro se* 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 224.)[1] For the reasons set forth below, the Court will deny Senke's Motion.

---

[1] The above-captioned case was originally assigned to Judge James M. Munley, who presided over all pre-trial and trial proceedings as well as sentencing. While this case was on appeal and following Judge Munley's death, upon defendant's filing of a motion for compassionate release, the case was re-assigned to Judge John E. Jones in December of 2020. As the result of the issuance of a mandate by the Third Circuit Court of Appeals vacating the District Court's judgment as to the imposition of certain special conditions and a special assessment fee, but affirming the judgement as to Senke's conviction and sentence in all other respects, *see United States v. Senke*, 986 F.3d 300 (3d Cir. 2021), Judge Jones also re-sentenced Senke. On September 27, 2021, this case was re-assigned to the undersigned following the retirement of Judge Jones.

## II. PROCEDURAL HISTORY

On February 4, 2015, Charles J. Senke was arrested in Scranton, Pennsylvania, after communicating with, and traveling to meet with, an individual he believed to be a minor for the purpose of engaging in sexual activity. (Doc. 1.) On December 20, 2016, a federal grand jury returned a two-count indictment against Charles Senke. (*Id.*) Thereafter, on October 3, 2017, a federal grand jury returned a three-count superseding indictment against Senke (Doc. 93.) The indictment charged Defendant with one count of traveling in interstate commerce for the purpose of engaging in sexual conduct with another person Senke believed to be 14-years old, in violation of 18 U.S.C. § 2423(b). (*Id.*) The indictment also charged Senke with using a means of interstate commerce to knowingly attempt to persuade, induce, entice, and coerce an individual who Senke believed had not attained the age of 18-years old to engage in sexual activity, in violation of 18 U.S.C. § 2322(b). (*Id.*) The final count charged Senke with sending electronic communications to an undercover law enforcement officer acting as a minor who had not attained the age of 16-years old containing images depicting men engaged in sexual activity and other sexual images. (*Id.*)

On December 20, 2016, Senke pleaded not guilty to all charges. (Doc. 12.) The Court appointed a federal public defender to represent Senke. (Doc 11.) On February 6, 2017, the federal public defender filed a motion to withdraw as counsel for Senke. (Doc. 22.) The Court scheduled a hearing to consider the motion on February 15, 2017. At that hearing, the Court conducted a *Faretta* inquiry with Senke, granted his request to proceed

2

*pro se*, and appointed the federal public defender as standby counsel. (*See* Hr'g Tr., Feb. 15, 2017, Doc. 190.)

On September 14, 2017, the Court held a hearing to address Senke's motion for pretrial release. (*See* Doc. 88.) At that hearing, following a conversation with the Court, Senke agreed to accept new court-appointed counsel and no longer proceed *pro se*. (*Id*.) On September 18, 2017, the Court appointed Attorney Matthew T. Comerford to represent Senke. (Doc. 86.)

On April 20, 2018, Senke filed a *pro se* motion titled "*Pro Se* Omnibus Pre-Trial Motion" and "Inadequate Representation" asserting that there was a breakdown in communication between Comerford and himself. (*Pro Se* Omnibus Pre-Trial Motion (Doc. 106.)) In the motion, Senke outlined various allegations, including that Comerford (i) attempted to pressure Senke into taking plea deals, (ii) did not take or respond to Senke's phone calls, (iii) refused to examine evidence with Senke, calling it "to[o] disgusting," (iv) did not provide Senke with all of the discovery materials, and (v) was not preparing a defense for Senke. (*Id*.)  The Court did not address or rule upon this *pro se* motion.

On July 20, 2018, Comerford filed a motion requesting that co-counsel be added to assist Senke in his defense. (Doc. 113.) On July 31, 2018, the Court granted the motion (Doc. 121) and appointed Curt Parkins as co-counsel for Defendant.

On August 8, 2018, a pretrial conference was held relating to scheduling a date for Senke's trial. (*See* Doc. 185.) During the conference, which was attended by Comerford,

3

Parkins and the prosecutor, but not Senke, Comerford brought to the Court's attention Senke's complaints to him regarding the adequacy of his representation. (*Id*. at 6-8.) Comerford stated that he was aware that Senke had raised concerns related to his representation and Comerford's reluctance to file additional pretrial motions. (*Id*. at 6-8.) Comerford nonetheless confirmed that Senke had not indicated that he wanted to fire him. (*Id*. at 8.) There is nothing in the record that shows that Senke communicated any additional concerns following the August 8, 2018, pretrial conference and leading up to the trial.

On October 2, 2018, Senke's trial commenced. At trial, Senke's counsel did not introduce evidence or call any witnesses. Senke's counsel argued the defense of entrapment through cross examination of a government witness and in both their opening and closing statements. (Trial Transcript Day 1 ("Day 1 Trial Tr.") (Doc. 187) at 18-26, 121-140; Trial Transcript Day 2 ("Day 2 Trial Tr.") (Doc. 188) at 50-69.) On October 3, 2018, a jury returned a verdict finding Senke guilty on all counts. (Day 2 Trial Tr. at 99-101.) Following the verdict and prior to sentencing, Senke filed a *pro se* Motion to Substitute Counsel. (*See* Doc. 161.)

On January 25, 2021, the Third Circuit affirmed Senke's conviction. *See United States v. Senke*, 986 F.3d 300 (3d Cir. 2021). However, the Circuit Court found that it was error for the District Court not to inquire into Senke's April 20, 2018, *Pro Se* Omnibus Pretrial Motion (Doc. 106) raising concerns regarding his representation. *See id.* at 306. Although the Third Circuit explained that "the District Court's failure to address Senke's

complaints regarding his counsel was an abuse of discretion under our precedent in *United States v. Diaz*," it declined "to review this error for prejudice on direct appeal in the first instance." *Id*. In finding that Senke's claim could not be viewed as a claim for a right to a new trial based on structural error, the Third Circuit held that Senke's claims regarding the inadequacies of his defense counsel should be evaluated for ineffectiveness:

> [I]t is possible to examine the record for identifiable mistakes and assess whether those mistakes affected the outcome of his trial. Senke's claim is therefore more appropriately viewed as one for ineffectiveness, which must be reviewed for prejudice. The wrinkle, though, is that Senke has not attempted to show prejudice in this direct appeal. And the District Court has not yet evaluated the matter. This is why, generally, we do not review claims of ineffectiveness on direct appeal and prefer that they be raised through a habeas corpus proceeding. Accordingly, although the District Court failed to inquire into Senke's complaints about counsel, we conclude that we cannot grant Senke relief on this claim as it is presently framed. We note that our disposition is without prejudice to Senke's ability to bring a claim under 28 U.S.C.§ 2255.

*Id*. at 314.  The Third Circuit further declined to view Senke's *Pro Se* Omnibus Pretrial Motion (Doc. 106) and subsequent appeal as alleging an irreconcilable conflict between defense counsel and himself.

> [Senke] has not claimed that he was somehow deprived of his right to knowingly and intelligently represent himself. Nor has Senke claimed that Comerford had any conflict of interest, or that he was so "embroiled in irreconcilable conflict" with Comerford that he was deprived "of the effective assistance of any counsel whatsoever," as some of our sister circuits have examined. Despite his earlier misgivings with counsel, Senke proceeded to trial with the assistance of Comerford. He therefore cannot also claim that he was denied the right to any counsel at all.

*Id*.

5

On September 27, 2021, this case was reassigned to the undersigned.  On February 18, 2022, Senke filed a 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 224), raising many of the same allegations regarding his defense counsel that were made in his *Pro Se* Omnibus Pretrial Motion (Doc. 106) and on appeal.

### III. STANDARD OF REVIEW

#### a. 28 U.S.C. § 2255

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).  A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. 2255(f)(3).  A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.  28 U.S.C. § 2255(b).

Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, (1962). If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005), the Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255,

our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." *McCoy,* 410 F.3d at 134 (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

*Id.* at 545-46. Generally, the petitioner bears the burden of proof in § 2255 proceedings. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are properly raised for the first time on collateral review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 689–92). For the first prong, *Strickland* emphasizes that a court's evaluation of an attorney's performance must be "highly deferential" so as to diminish "the distorting effects of hindsight." *Strickland,*

466 U.S. at 689. To establish prejudice under *Strickland*'s second prong, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The petitioner bears the burden of establishing that counsel's performance was constitutionally inadequate and prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002). In asserting prejudice, the petitioner must show more than a conceivable likelihood that the outcome would have been different.

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Wong v. Belmontes*, 558 U. S. [15] (2009) (per curiam) (slip op., at 13); *Strickland*, 466 U. S., at 693. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id.*, at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697. The likelihood of a different result must be substantial, not just conceivable. *Id.*, at 693.

*Harrington v. Richter*, 562 U.S. 86, 112-113 (2011).

## IV. ANALYSIS

Senke's *pro se* motion seeks relief on the basis that he received ineffective assistance of counsel. (Doc. 231.) Senke sets forth four overlapping grounds for relief. The Court will address these four grounds in turn, but to adequately address each of Senke's

arguments, the Court first sets forth the evidence, testimony, and arguments presented at trial.

On October 2, 2018, Senke's two-day trial commenced. (Day 1 Trial Tr.). In its opening statement, the Government argued that Senke was persistent and aggressive in attempting to engage in sexual activity with someone he believed to be a minor and should be found guilty on all three counts. (*Id.* at 11:19-25, 16-17.) Senke's counsel then delivered their opening statement, arguing that Senke was entrapped by the Government and induced into committing the crimes alleged by the Government. (*Id.* at 18:11-26:25.) Senke's counsel argued that there was a pattern of grooming and enticement on the part of the Government in attempting to persuade Senke to commit a crime (*id.* at 21:3-6), and that Senke's actions on an adult dating website showed that he attempted to cease communications with Agent Leri, the principal investigator involved in the case. (Day 1 Trial Tr. at 21:23-25, 23:22-25.)

Following opening statements, the Government called Trooper Justin Leri to testify as to his involvement in the case. (*Id.* at 27:9.) During direct examination, Agent Leri testified as to his role within the Criminal Investigation Unit within the Pennsylvania State Police and his prior specialization in investigating online sexual abuse and exploitation of children. (*Id.* at 28-29.) Agent Leri then testified as to the online persona that he used, posing as a 14-year-old boy, on a social networking website, "Gay.com," to investigate child predators. (*Id.* at 36.) On this website, during September of 2014, Senke contacted Agent

10

Leri's profile. (*Id.* at 38-39.) During his direct examination, Agent Leri testified that he captured all electronic communications between himself and Senke (*id.* at 41:21-25), which were admitted into evidence and read in their entirety to the jury. Senke's first message to Agent Leri was "U into generous older men, Syracuse ny?" (Gov. Trial Ex. 2 ("Transcript Gaydotcom – messages.mp4"), Doc. 264-6, at 3; Day 1 Trial Tr. at 38:24-39:1.) After Agent Leri messaged Senke "Hi iii iii how old r u I prob to young :(((("", Senke replied "No I love young guys 47," and "I can be generous." (Gov. Trial Ex. 2, at 3; Day 1 Trial Tr. at 39:12-16.) Agent Leri then responded stating "ooooooo cool I had to put 18; to make prof but I 14 but almost 15 is that ok I J don't want to lie to me n hurt my feelings s." (Gov. Trial Ex. 2, at 3; Day 1 Trial Tr. at 39:25-40:3.) Despite Senke now being aware of the profile's fake age, Senke proceeded to request sexually graphic images from the profile (Gov. Trial Ex. 2, at 3-4; Day 1 Trial Tr. at 41:1-2), inquire into the undercover agent's sexual experiences (Gov. Trial Ex. 2, at 3-4; Day 1 Trial Tr. at 44:22-23) ("u like older u ever been fucked and u ever suck cock"), and send sexually graphic images to the profile (Gov. Trial Ex. 2, at 3-4; Day 1 Trial Tr. at 45:5.)

As the conversation between Agent Leri and Senke progressed, Senke stated, "What do u want to be fucked and to suck me and for u to fuck me and I suck u how big is your cock." (Gov. Trial Ex. 2, at 5; Day 1 Trial Tr. at 48:15-17.) Senke also stated that "Ok without the naked pics of your ass cock and body there is no use in chatting any more have a nice day." (Gov. Trial Ex. 2, at 5; Day 1 Trial Tr. at 48:18-21.) After being asked by Agent

Leri what Senke would like to do, Senke stated "Suck each other and fuck each other."
(Gov. Trial Ex. 2, at 5; Day 1 Trial Tr. at 49:1.) After briefly discussing possibly meeting the
following week, Senke stated that "I'll suck ull balls and kiss u and lick u all over." (Gov. Trial
Ex. 2, at 5; Day 1 Trial Tr. at 49:4-7.)

Following the initial conversations that took place between September 3, 2014, and
September 16, 2014, there was a four month pause in communications after Senke
indicated that he had to go "back on the road" for his truck driving work. (Day 1 Trial Tr. at
73:13-15.) Following the four-month pause in communications, Agent Leri re-initiated
communications with Senke on January 30, 2015, by messaging the word "hi." (*Id.* at
74:11.)

After Agent Leri reestablished his persona as 14-year-old "Danny" from Scranton,
who Senke indicated he remembered speaking to a few months prior (*id.* at 75:16), Senke
quickly sent sexually graphic photos (*id.* at 79:12-23) to Agent Leri and attempted to plan a
time to meet at a motel to stay the night (*id.* at 77:16-23). Only a few days prior to Senke
driving to Scranton, Agent Leri reminded Senke how young his fake persona was. (*Id.* at
86:2-4) ("You prob get pics a lot from young. He replied, show me how hot you look naked.
Yes, I do, ex bfs. I replied, how young, like my age? He replied, no, 18 to 23.") Throughout
the entirety of their conversation, Agent Leri reminded Senke that the person with whom he
was communicating was a 14-year-old boy (*see e.g.* Day 1 Trial Tr. at 58:25, 68:12-14,

79:10-11) ("I'm almost 15 though"), which Senke also repeatedly acknowledged during their conversation (*id.* at 55:13-15, 86:3-4.)

Two days prior to his February 4, 2015, arrest, Senke said "love u. I'll give u a rubdown." (*Id.* at 94:7.) The following day, on February 3, 2015, Senke continued to demand sexually graphic images from Agent Leri (*id.* at 95:21-96:24) and inquired into Agent Leri's sexual experiences (*id.* at 97:10-18.) Senke then repeatedly demanded that Agent Leri delete the sexually graphic messages and plans to meet from his phone. (Day 1 Trial Tr. at 98, 99:16-18, 101:23-25) ("I'll be like 3 hours, babe. Delete this.")  Agent Leri testified that, a few hours later, on February 4, 2015, he and other law enforcement officers arrested Senke upon his arrival at the Steamtown Mall in Scranton. (*Id.* at 104:5-10.) Agent Leri then testified as to the procedures of the arrest, Senke's signature on the *Miranda* Warning and Waiver of Rights, and his assessment of his conversations with Senke. (*Id.* at 103-110.)

Agent Leri was then cross-examined by Defendant's counsel. (*Id.* at 110-141.) Comerford inquired into Agent Leri's understanding of Gay.com being an adult-oriented website. (*Id.* at 116.) Comerford also questioned why Agent Leri did not take a screenshot of the profile he was using on the website. (Day 1 Trial Tr. at 118:1-8.) Comerford asked Agent Leri about Senke's message indicating that he had never been with a minor before. (*Id.* at 121:25-122:19.) Agent Leri also acknowledged that it was he who initiated contact with Senke on various occasions, including on January 30, 2015, following a four month pause in communications. (*Id.* at 130-131.) Comerford questioned Agent Leri on why he

made an empathetic fake persona that could be viewed as appealing to the emotional sympathies of an adult. (*Id.* at 138-139.) Comerford also questioned Agent Leri on the four-month pause in communications between himself and Senke. (*Id.* at 140:9-23.) As Senke's counsel suggested in his cross examination of Agent Leri, these questions were primarily aimed at strengthening Senke's entrapment defense. (Day 1 Trial Tr. at 131-132.) Following a short redirect and recross examination of Agent Leri (*id.* at 141-144), his testimony at trial concluded (*Id.* at 144.)

The Government then called Agent Nicole Whaley, a special agent with the Pennsylvania Office of the Attorney General at the time of Senke's arrest. (*Id.* at 145:1-2.) Agent Whaley testified as to her involvement in the search of Senke's vehicle on February 5, 2014, the day after Senke's arrest at the Steamtown Mall. (*Id.* at 146:21-147:23.) Agent Whaley testified that she seized personal lubricant, condoms, and Senke's computer and phone, among other items, from Senke's vehicle. (*Id.* at 151:1-25.) Agent Whaley's testimony concluded during that day.

On the second day of the trial, the Government called Corporal Christopher Hill of the Pennsylvania State Police to testify about his involvement in recovering data from Senke's seized iPhone. (Day 2 Trial Tr. at 10:8-24.) Corporal Hill testified that he was able to identify the phone as being Senke's and was able to recover messages between Senke and Agent Leri's persona along with directions to Scranton. (*Id.* at 18-22.) Following a brief cross examination by Senke's counsel, the Government rested its case. (*Id.* at 26:13-14.)

Senke's counsel then informed the Court that the defense would not call a character witness or any other witness and that Defendant would not testify on his own behalf. At defense counsel's request, a colloquy was held outside the presence of the jury where Senke confirmed his decision not to testify or to call a character witness. (*Id*. at 26-28.) Comerford also orally moved for a judgment of acquittal, which the Court denied. (*Id*. at 28-30.)

The Government delivered its closing statement requesting that the jury find Senke guilty of the crimes charged. (Day 2 Trial Tr. at 35-50.) Senke's counsel then delivered their closing statement, extensively arguing that the jury should find that Senke was entrapped by the Government. (*Id*. at 50-69.) In support of its defense that the defendant would not have committed the crimes had the Government not induced him to do so (*id*. at 58:8-25), Senke's counsel emphasized the evidence showing that Senke had cut off communications with Agent Leri for four months (*id*. at 56:2-25) and that Senke had sent a message to Agent Leri stating "no sex" (*id*.) In their rebuttal, the Government responded that Agent Leri merely gave Senke the opportunity to commit the crime but did not entrap him. (Day 2 Trial Tr. at 71:1-6.) Following the Court delivering jury instructions and the jury's deliberations, the jury rejected Senke's entrapment defense and returned a guilty verdict on all three counts. (*Id*. at 99.)

Senke now argues that his counsel's alleged ineffectiveness prejudiced the outcome of his case. None of Senke's arguments establish the requisite showing of prejudice to satisfy *Strickland*'s second prong. The jury's determination of guilt beyond a reasonable

doubt was not attributable to any ineffectiveness on the part of Senke's counsel. As set forth in the recitation of the evidence presented at trial, *supra*, Senke's conduct, including his numerous text messages and eventual travel to meet someone he believed to be a minor, presented the jury with overwhelming evidence of guilt. (*See* Day 1 Trial Tr. at 55:13-15, 58:25, 68:12-14, 79:10-11, 86:3-4.) Further, defense counsel extensively argued the defense of entrapment in their opening and closing statements and conducted a thorough cross-examination of Agent Leri with respect to the text messages and the Government's alleged attempts to entrap Senke. (*Id.* at 120-141.) The present allegations of ineffectiveness of counsel advanced by Senke offer no basis to conclude that there is a substantial likelihood that the outcome of Senke's trial would have been different, but for counsel's alleged errors. Nonetheless, the Court will analyze each of Senke's grounds for relief individually.

## A. Ground One

Senke alleges there was ineffective assistance of counsel because there was a complete breakdown in communication between counsel and himself that amounts to ineffective representation that resulted in prejudice to him. (Doc. 231 at 1.) Specifically, Senke asserts that his counsel did not communicate with him and was not invested in his defense. (*Id.*)

Senke first references the Third Circuit's opinion stating that "the District Court's failure to address Senke's complaints regarding his counsel was an abuse of discretion."

(Doc. 231 at 1); *Senke*, 986 F.3d at 306. Senke argues that the Court of Appeal's finding

that the District Court should have addressed his *Pro Se* Omnibus Pretrial Motion (Doc.

106) means that Senke "meets the first element of *Strickland* showing deficient performance

falling below the wide range of competence demanded of attorneys in criminal cases." (Doc.

231 at 1.) Senke fails to explain how the District Court's inaction as to Senke's *Pro Se*

Omnibus Pre-Trial Motion (Doc. 106) renders Comerford's representation ineffective. In fact,

as the Third Circuit noted in its opinion, Comerford took the initiative to raise Senke's

concerns during the pretrial conference:

> Senke submitted a communication to the District Court in which he complained
> about his attorney, but he stopped short of asking for substitute counsel. The
> communication raised serious issues, including that Comerford was not
> preparing for trial and had called the evidence "to[o] disgusting" to review with
> Senke. This alone gives us pause as to the District Court's inaction. But then
> at a pretrial conference, Comerford brought the strained relationship to the
> District Court's attention. Referencing Senke's pretrial motion, Comerford
> explained that the conflict stemmed from his refusal to file additional pretrial
> motions, and Senke's insistence that he do so. Of course, an attorney is not
> required to take every action that his client desires. But this conversation,
> coupled with Senke's letter raising alarming concerns, should have indicated to
> the District Court that further inquiry was necessary.

*Senke*, 986 F.3d at 311.

Comerford's decision to bring Senke's concerns to the District Court's attention and

attempts to explain why Senke was raising those concerns related to his representation is

evidence that Comerford's representation did not fall below an objective standard of

reasonableness.[2] Further, the record reveals that Comerford worked to prepare an entrapment defense for Senke prior to his trial, and successfully filed a motion in limine to preclude proffered Rule 404(b) evidence (Doc. 114) that prevented the Government from introducing evidence of a prior sexual encounter that would have been damaging to Senke (*see* Doc. 124.) The Court thus finds that the District Court's failure to inquire into Senke's *Pro Se* Omnibus Pretrial Motion (Doc. 106) does not meet either prong of the *Strickland* analysis and that this allegation warrants no hearing or relief.

Senke also alleges that Comerford attempted to pressure him to take a plea deal. (Doc. 231 at 2.) To comport with the Fifth Amendment, a defendant's plea must be voluntary and intelligent. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969). To satisfy *Strickland*'s "objective standard of reasonableness" with respect to a plea, 466 U.S. at 688, an attorney must "give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), cert. denied, 571 U.S. 1224 (2014). To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

---

[2] Having failed to meet the first prong of *Strickland*, the Court need not address the second prong relating to a showing of prejudice. Nonetheless, the Court notes that Senke also does not allege any facts to show how the outcome of his case was prejudiced by the District Court's failure to inquire into his *pro se* motion regarding his counsel.

Senke fails to meet either prong of *Strickland* as it relates to his allegation that Comerford pressured him to take a plea deal. Senke offers no details surrounding how Comerford pressured him to take a plea deal, and Senke's counsel would not be deficient for allegedly encouraging him to take a plea deal. The fact that Senke entered a not guilty plea and took his case to trial despite Comerford's alleged advice to the contrary is clear evidence that Senke was not prejudiced by any claimed pressure to take a plea deal. Additionally, as the Government notes (Doc. 264 at 12), this allegation belies a claim of lack of communication between Senke and counsel and would be direct evidence of defense counsel's efforts to confer with his client and advise him as to how to proceed with his case. Thus, Senke's claim does not meet either element of the *Strickland* analysis and does not warrant a hearing or relief.

Senke next alleges that Comerford "did not take or return phone calls and attempted to thwart in-person meetings" (Doc. 231 at 2) including the August 8, pre-trial conference that Senke claims he was intentionally excluded from. (*Id*. at 3.)[3]  Even accepting the truth of Senke's allegations, *see Forte*, 865 F.2d at 62, Senke has not meet *Strickland*'s requirements for a showing of ineffective assistance of counsel. The Third Circuit has summarized a defendant's Fifth Amendment right to be present in criminal proceedings as well as his rights under the Sixth Amendment Confrontation Clause:

---

[3] Senke raises similar allegations in his Motion for Review of Sentence (Doc. 243), specifically that his counsel prevented him from attending the pre-trial conference. Because the allegations raised in that motion are addressed in this opinion, the Court will deny that motion (Doc. 243) for the same reasons set forth herein.

The Due Process Clause of the Fifth Amendment ensures a criminal defendant the "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings...." *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Federal Rule of Criminal Procedure 43(a) expands that right to include "every trial stage, including jury impanelment and the return of the verdict," but defendant's presence is not required when "[t]he proceeding involves only a conference or hearing on a question of law." Fed.R.Crim.P.43(b)(3).

[Defendant] contends the pretrial conference concerning whether to impanel an anonymous jury was a critical stage of the procedure against him, so his presence was required. [. . .] Rule 43(b)(3) makes clear that the defendant is not required to be present at a conference and hearing on a question of law.

To show a due process violation, Cole must demonstrate that his absence from the conference frustrated the fundamental fairness of the proceedings.

. . . .

[Under the Sixth Amendment's Confrontation Clause, a] testimonial hearsay statement cannot be used at trial unless there has been an opportunity for the defendant to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

*United States v. Cole*, 246 F.App'x 112, 116–17 (3d Cir. 2007), as amended (Mar. 9, 2010);

*see also United States v. Downs*, 61 F.4th 1306, 1314-15 (11th Cir. 2023) ("And we have

held that the Sixth Amendment 'does not confer upon the defendant the right to be present

at every conference at which a matter pertinent to the case is discussed, or even at every

conference with the trial judge at which a matter relevant to the case is discussed.' *United*

*States v. Vasquez*, 732 F.2d 846, 848 (11th Cir. 1984).").

Even if Comerford did not answer Senke's calls and did not include him in the pretrial

conference at issue, these allegations alone do not fall below an objective standard of

reasonableness, *Horn*, 485 F.3d at 127. Senke does not allege facts demonstrating how Comerford's actions or inactions may have prejudiced the outcome of his case. Regarding the pretrial conference at issue, there were no witnesses present at the conference that Senke had a right to confront under the Confrontation Clause. Additionally, the pretrial conference did not implicate Senke's ability to defend against his charges and was merely a logistical scheduling conference ahead of trial. The fact that issues relating to Senke's *Pro Se* Omnibus Pretrial Motion (Doc. 106) and other pretrial motions were briefly raised and discussed does not mean that Senke had a right to be present at the conference. *See Cole*, 246 F.App'x at 116–17. Senke also alleges no facts that indicate there is a "substantial, not just conceivable" likelihood that the outcome of his case would have been different had Comerford returned his calls and included Senke in pretrial meetings. *See Harrington,* 56 U.S. at 112-113. Senke is thus not entitled to a hearing or relief based on this allegation.

Senke next argues that Comerford "refused to go over evidence, calling it 'too disgusting to look at' and failed to open six (6) envelopes of exculpatory evidence presented by Defendant." (Doc. 231 at 2.) Assuming such allegations are true, the Court finds that such comments may fall below an "objective standard of reasonableness," but fail to meet the "prejudice" prong of *Strickland*.

To successfully allege a failure to investigate pieces of evidence, a petitioner must be specific as to what the evidence would have shown and how it would have benefited the defendant's case. "'[F]ailure to investigate a critical source of potentially exculpatory

evidence may present a case of constitutionally defective representation.'" *United States v. Travillion,* 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (quoting *United States v. Baynes,* 622 F.2d 66, 69 (3d Cir. 1980)). Even if a failure to investigate is shown, a petitioner must still show that they were prejudiced because of their counsel's inaction:

> [T]o show prejudice, a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result."

*United States v. DeCruz,* No. 3:11-CR-199, 2018 WL 585703, at *4 (M.D. Pa. Jan. 29, 2018) (quoting *United States v. Askew,* 88 F.3d 1065, 1073 (D.C. Cir. 1996)).

Assuming the truth of Senke's allegations, Comerford's refusal to go over evidence with Senke purportedly because the evidence was "too disgusting to look at" is an improper justification for declining to review certain pieces of evidence. *See Senke,* 986 F.3d 300. Nonetheless, there is no basis in the record by which Senke can meet the "prejudice" prong of *Strickland.* Senke simply states that there were "six envelopes of exculpatory evidence presented by Defendant" (Doc. 231 at 2), without specifying what the exculpatory evidence is or how it would have created a substantial likelihood that the outcome of the trial would have been different. *See Harrington,* 562 U.S. at 112-113. The record demonstrates that the evidence introduced and subject to questions on direct and cross-examination at trial was overwhelming in showing that Senke intended to and indeed did travel to Scranton (Day 1 Trial Tr. at 107) for the purpose of having sex with someone he believed to be a 14-year-old

boy (*id*. at 55-58.) Senke's text conversations with Agent Leri were introduced at trial and read by Agent Leri on the witness stand. (Day 1 Trial Tr. at 38-103.) The text messages demonstrate that Senke was aware he was speaking with someone who he thought was a 14-year-old boy (*id*. at 55:13-15, 58:25, 68:12-14, 79:10-11, 86:3-4) ("You are very cute for 14") and that Senke was interested in having sex with that individual (*id*. at 55-58, 97:10-18) ("Have you ever sucked a cock or been fucked in your ass or did it to a guy? I love a guy with a 3 or 4 inch.") Additionally, the record evidence reveals that Senke traveled from New York to Scranton (*id*. at 103-104) to meet someone who he thought was a 14-year-old boy (*id*. at 55:13-15, 58:25, 68:12-14, 79:10-11, 86:3-4.) Thus, Senke's conclusory allegations that Comerford failed to review and investigate evidence, including six unopened envelopes whose contents are unidentified by Senke, provides no basis by which the Court could find that it was "'reasonably likely' the result [of trial] would have been different," *Harrington*, 562 U.S. at 112-113. Therefore, a hearing is not required because the record conclusively shows that Senke is not entitled to relief for this allegation.

Senke's final argument in his first ground for relief alleges that Comerford "ignored Senke's request to file a motion for indictment or turn over discovery to his client." (Doc. 231 at 2.) Senke does not state, nor can this Court deduce, what a "motion for indictment" means or how it would have affected his case. Further, Senke does not explain what discovery was not provided to him by his counsel nor does he claim that evidence was produced at trial that he had not previously seen or reviewed. Thus, Senke fails to show that

his counsel's performance fell below an objective standard of reasonableness and he does not satisfy the first prong of *Strickland*.

With respect to Senke's argument that Comerford's refusal prejudiced his ability to prepare and present exculpatory evidence at trial (*id.*), Senke does not specify what exculpatory evidence existed which, if presented at trial, would have created a substantial likelihood that the outcome of the case would have been different, and therefore he does not satisfy the prejudice prong of the *Strickland* analysis. For these reasons, Senke is not entitled to a hearing or relief based on this allegation.

## B. Ground Two

Senke's second ground for relief is based on his argument that Comerford was acting against his interests, including through Comerford's actions before and during the pretrial conference, which resulted in prejudice. (Doc. 231 at 3.) The Court will only address Senke's allegations that were not previously addressed, *supra*, in its analysis of Senke's first grounds for relief.

Senke first alleges that Comerford and the District Court were engaged in "a scheme in which the Judge would work in cahoots with Comerford to preclude Senke from filing any more motions." (Doc. 231 at 3.) This characterization of events distorts the record, which demonstrates that Comerford was seeking direction from the Court as to how to handle Senke's desire that his counsel file additional pre-trial motions.

> MR. COMERFORD: Right. He's giving me a hard time. He wants me to file more motions. I said, well, that's not the way it works. I said, you represented

yourself and filed motions, the Court ruled on them and the government had to respond, what motions are you looking to file. He did file a motion to suppress, right?

MS. OLSHEFSKI: He did.

MR. COMERFORD: I said that was already ruled on. So I'm just letting you know he's not happy with me that I am not filing more motions. I don't know - -

THE COURT: He doesn't have much of a chance of losing you, right. You're the second or third guy on this deal.

MR. COMERFORD: Right. I'm just - - I just want you to - - like, how do you want me to cover the record? Do you want me to file a motion to let - - leave of court to file more motions and you deny it? I don't know how you want me to handle it.

THE COURT: Whatever you think - -

MR. COMERFORD: I mean, I am telling him, like, listen, you don't just get to keep filing motions, there's deadlines, you have done this, the Court has ruled.

THE COURT: I think our rule - - timeliness.

MR. COMERFORD: I mean, they were ruled on.

(Pretrial Conference Tr., Doc. 185 at 6-8.)

This record shows that Comerford was concerned with the appropriateness of filing additional motions after a number of pre-trial motions had already been filed and ruled upon by the Court and the time for filing pre-trial motions had now passed rather than a purported scheme to prevent Senke from raising a defense. Thus, the Court finds that Comerford's decision not to file additional motions on behalf of Senke did not fall below an "objective standard of reasonableness" to satisfy the first prong of *Strickland*. Additionally, Senke does

not allege any specific facts that would allow the Court to conclude that there was a

substantial likelihood that the outcome of his case would have been different had Senke

been able to file additional pretrial motions, the contents of which he does not disclose in his

Memorandum in Support of Petitioner's § 2255 Motion (*see* Doc. 231 at 4.) Therefore,

Senke's vague allegations of collusion between Judge Munley and Attorney Comerford to

foreclose the filing of additional motions ignores the filings by Defendant himself, in a *pro se*

capacity,[4] and the motions filed by Comerford on his behalf, and provides no allegations of

fact to identify the nature or purpose of any additional motions or how any such motion, if

filed, would support a claim of ineffective assistance of counsel.

## C. Ground Three

Senke's third ground for relief contends that his counsel failed to review and present

evidence favorable to him at trial and failed to call an expert witness or present an

---

[4] For example, as summarized in Judge Munley's September 12, 2017, memorandum opinion addressing Defendant's numerous pre-trial *pro se* motions:

> The defendant lists his issues as follows: 1) Motion to dismiss-quash criminal information – habeas corpus; 2) Motion to dismiss indictment; 3) Motion to suppress evidence seized from car; 4) Motion to suppress agent's phone; 5) Motion to sequester all witnesses and non-affiants during omnibus hearing and trial; 6) Motion to notify the United States Attorney of the Defendant's potential entrapment defense; and 7) Motion for leave to file supplemental motions. Defendant has also filed another "Omnibus Pretrial Motion" and many other miscellaneous motions. We will address these issues [in the memorandum opinion].

(Doc. 80, at 2-3); (*see also*, Doc. 81 (Order accompanying memorandum opinion denying Defendant's motions filed as documents 29, 30, 31, 35, 39, 40, 44, 48, 52, 53, 55, 65, 67)).

entrapment defense at trial. (Doc. 231 at 4.)[5] Senke argues that his counsel failed to raise his entrapment defense and call expert witnesses to strengthen his defense at trial. (*Id.*) Specifically, Senke references Comerford's failure to call Jonathan Turley to testify as an expert witness at trial. (*Id.* at 5.) Preliminarily, to the extent that Senke is arguing that Jonathan Turley should have been called to offer expert testimony that he was entrapped, such an argument must fail. Pursuant to Federal Rule of Evidence 704(b), "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

Additionally, the Third Circuit has recently noted that judicial scrutiny of counsel's trial strategy must be viewed with great deference:

> [W]e are cognizant that "[j]udicial scrutiny of counsel's performance must be highly deferential." *See id.; Burt v. Titlow*, 571 U.S. 12, 22–23, 134 S.Ct. 10, 187 L.Ed.2d 348 (2013); *see also United States v. McCoy*, 410 F.3d 124, 135 (3d Cir. 2005) ("[C]ourts have been highly deferential to counsel's strategic decisions."). And while judges may be tempted to second guess defense counsel's decisions, we must keep in mind that "advocacy is an art and not a science, and ... strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681, 104 S.Ct. 2052.

---

[5] Senke alleges similar arguments in his Habeas Corpus Petition to Dismiss (Doc. 235) that are addressed here. Because the plethora of allegations raised in that petition are addressed in this memorandum opinion, the Court will deny that petition (Doc. 235) for the same reasons set forth herein.

*Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022). Counsel for a

defendant need not follow the strategy recommendations of their client and must only

exercise reasonable professional judgment.

> "The decision of whether to interview and call a particular witness is generally
> a strategic choice made by counsel and is entitled to a 'heavy measure of
> deference.'" *U.S. v. Brown*, No. 04-532, 2011 WL 4835846, at *4 (E.D. Pa. Oct.
> 12, 2011) (quoting *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052). An
> evaluation of the failure on the part of defense counsel to call a witness at trial
> under the first prong of *Strickland* requires the Court to decide whether the
> decision not to call the witness was "in the exercise of reasonably professional
> judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052; *see also Duncan v.
> Morton*, 256 F.3d 189, 201 (3d Cir. 2001). Given professional reasonableness
> as a touchstone, "[t]he Constitution does not oblige counsel to present each
> and every witness that is suggested to [them]." *United States v. Balzano*, 916
> F.2d 1273, 1294 (7th Cir. 1990). Accordingly, when challenging the failure to
> interview a potential witness, "there must be a clear showing that the testimony
> would have been material and favorable." *Brown*, 2011 WL 4835846 at *4.

*United States v. Claude*, Crim. A. No. 12-33-1, 2020 WL 5083890, at *9 (E.D. Pa. Aug. 14,

2020) (second alteration in original); *see also Lema v. United States*, 987 F.2d 48, 54 (1st

Cir. 1993) ("The decision whether to call a particular witness is almost always strategic,

requiring a balancing of the benefits and risks of the anticipated testimony."). As the Court

discussed, *supra*, Senke's counsel did raise the entrapment defense in his cross

examination of Agent Leri (Day 1 Trial Tr. at 113-140) and in both his opening (*id.* at 18:11-

26:25) and closing statements (Day 2 Trial Tr. at 50-69.)

District courts in this Circuit have also found that post-conviction complaints of

uncalled witnesses are unlikely to be a sufficient basis for relief. In *United States v.*

*Throckmorton*, the United States District Court for the Western District of Pennsylvania

explained that:

> Post-conviction claims of uncalled witnesses are viewed with skepticism. "Under the United States Constitution, trial counsel need not call every witness suggested to him." *United States v. Griffin*, 1993 WL 34927, at *5 (E.D.Pa. Feb.9, 1993) (citing *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir.1990)). Moreover, "[d]ecisions on which witnesses to call to testify are normally strategic decisions left to counsel." *United States v. Merlino*, 2 F.Supp.2d 647, 662 (E.D.Pa.1997); *Griffin*, 1993 WL 34927, at *5 (citations omitted). Generally, the "expertise [of counsel] leads them to choose only those witnesses likely to assist the case." *United States v. Ciancaglini*, 945 F.Supp. 813, 823 (E.D.Pa.1996). As such, the decision of which witnesses to call "is precisely the type of strategic decision which the Court in *Strickland* held to be protected from second-guessing." *Id*.

> "[W]here a [§ 2255 movant] claims his trial counsel failed to call a witness, he must make a specific showing as to what the evidence would have been, and prove that this witness's testimony would have produced a different result. Otherwise, the prejudice prong under Strickland is not satisfied." *United States v. Edwards*, No.Crim. 96-592, 2000 WL 572704, at *5 (E.D.Pa. May 8, 2000) (citations and internal quotation marks omitted).

*United States v. Throckmorton*, No. 02:05-CR-0219, 2009 WL 3465111, at *6 (W.D. Pa. Oct. 22, 2009).

Here, Senke argues that counsel was deficient in failing to call Mr. Turley for the purpose of establishing an entrapment defense. (Doc. 231 at 5.) However, Senke has not made any showing as to what Mr. Turley's testimony would have been or how the testimony would have produced a different result. Additionally, the record demonstrates that Senke's counsel pursued the entrapment defense prior to trial and extensively raised this defense at trial. On April 4, 2017, the Government filed a motion in limine seeking to preclude Senke

from advancing a defense of entrapment. (Doc. 51.) The District Court denied the

Government's motion to preclude this defense and allowed Senke to advance that

affirmative defense at trial, which he did. (Doc. 224 at 15-24.) At trial, Comerford referenced

specific text messages between Senke and Agent Leri throughout his cross examination to

suggest to the jury that Senke was entrapped. (Day 1 Trial Tr. at 121-128.) Comerford

further questioned Agent Leri about his knowledge of entrapment, and whether Agent Leri

induced Senke into engaging in sexual activity. (*Id*. at 131-140.)  Senke's argument

surrounding Comerford's failure to call Jonathan Turley as an expert witness does not

allege specific facts to establish how Turley's testimony would have influenced the outcome

of his case. Thus, to the extent Senke argues that trial counsel "outright" refused to present

any evidence or use the entrapment defense, he is wrong. Senke also does not explain

what, if any, relevant, material, and admissible evidence was available and not utilized by

trial counsel when presenting the entrapment defense. As a result, Senke's argument does

not warrant a hearing or relief.[6]

---

[6] Senke also argues that "Comerford failed to present relevant medical information regarding
Senke's reliance on Viagra to sexually perform, particularly as he had no such medication when arrested."
(Doc. 231 at 5.) The Court need not delve any further into this subject beyond acknowledging that men who
cannot maintain erections without Viagra may still engage in alternative sexual activity. Indeed, as Senke
revealed in his own text messages to the undercover agent, he was interested in being the receptive
partner. (Doc. 187 at 97) ("You ever been topped? You ever top?") This same analysis could apply to
Senke's argument that his prior sexual encounter the evening before prevented him from sexually
performing the next day. (Doc. 231 at 5.) Therefore, even if the evidence of Senke's need for Viagra to
sexually perform or evidence of his prior sexual encounters was introduced at trial, the Court finds that
these arguments would not have influenced the outcome of Senke's case and conclusively do not satisfy
Strickland's second prong of prejudice.

Senke also alleges that Comerford failed to raise exculpatory text messages and other evidence in the record that would have suggested Senke did not intend to have sex with a minor. (Doc. 231 at 5.) Senke argues that his texts stating "your [sic] too young. no sex. no sex. no sex ok" and other communications should have been raised by his counsel during trial. (*Id.*) The record demonstrates that Senke's counsel addressed text messages revealing that Senke had not had sex with a minor before and that indicated Senke's possible reluctance to have sex in this instance. (Day 1 Trial Tr. at 22; Day 2 Trial Tr. at 58.) It matters not that these text messages were introduced by the Government; it only matters that the jury was aware of these messages and that Senke's defense counsel *did* refer to certain introduced texts to attempt to cast Senke's communications in a better light and formulate an argument of entrapment.

Additionally, Senke alleges that Comerford failed to introduce evidence that his text message introduced at trial stating "you get a motel with me?" (Day 1 Trial Tr. at 77:16) was sent to a group, rather than directly to the individual Senke believed to be a 14-year old boy. (Doc. 231 at 5-6.) Senke also argues that Comerford failed to present evidence that Agent Leri sent Senke photos that appeared to be that of an adult (*id.*)  Finally, Senke alleges that Comerford failed to present an expert witness or testimony relating to the adult-only nature of "Gay.com." (Doc. 231 at 6.) Even assuming the truth of all three of these allegations, Senke offers no facts to suggest that any of these alleged failures on the part of Comerford prejudiced the outcome of his case. Counsel's strategic decisions relating to the number of

people included in a single text message, pictures sent to Senke allegedly showing an adult, and an expert witness on Gay.com could not have sufficiently overcome the evidentiary effect of Senke's text messages demonstrating that Senke knew he was speaking to someone he believed to be 14-years old and traveled to Scranton with the intent to have sex with that minor. (Day 1 Trial Tr. at 55:13-15, 58:25, 68:12-14, 79:10-11, 86:3-4.) The adult nature of the Gay.com website does not alter Senke's own words and actions while on the website, including the images and sexual messages he transmitted to the person he believed to be a minor while on the website. Senke does not explain how such expert testimony would have changed the outcome of the trial or in any way diminished the evidentiary effect of his own written words and actions while on the website. Thus, none of these alleged failures on the part of defense counsel warrant a hearing or relief.

Senke also argues that "Comerford failed to raise and preserve for review (evidentiary review) evidence potentially favorable to Petitioner's case, thus preventing such evidence from being admissible at a later point in time." (Doc. 231 at 6.) Senke fails to reference any specific facts surrounding this conclusory allegation and does not reference any evidence that would have been exculpatory. Thus, the Court cannot find that Comerford's alleged failure to raise and preserve evidence fell below an objective standard of reasonableness. Additionally, Senke's argument fails to meet the second prong of *Strickland* by not showing any specific prejudice he faced because of this failure.

32

Finally, Senke argues that Comerford should have advocated for stronger jury instructions surrounding the Government's burden to prove Senke's *mens rea*. (Doc. 231 at 6.) The record does not support Senke's characterization of the instructions. Neither of the parties to this case submitted jury instructions suggesting that the Government's burden was, as Senke suggests, merely to prove that Senke believed "it might be a minor, or could be a minor." (*See* Doc. 231 at 6; Doc. 110; Doc. 115.) With minimal exceptions, the District Court used the jury instructions proposed by the Government that repeatedly stated Senke had to have "believed" the person he was communicating with was a minor with respect to Count 1 or had not attained the age of 16 with respect to Counts 2 and 3. (Day 2 Trial Tr. at 83-87.) These instructions accurately convey the requisite *mens rea. See e.g. United States v. Davis*, No. 19-1696, 2021 WL 97427 (3d Cir. Jan. 12, 2021) ("Section 2423(b) criminalizes 'travel[ ] in interstate commerce ... with a motivating purpose of engaging in any illicit sexual conduct with another person.' The Government introduced evidence that Davis traveled from New York to Pennsylvania on the morning of his planned meeting with Marisa. As discussed above, there was ample evidence from which the jury could conclude that Davis believed he was meeting a minor and that the meeting would culminate in sex."); *see also* 3 Modern Federal Jury Instructions-Criminal ¶¶ 64-21, 64-23 (defining the elements of the offense of Interstate Travel to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423(b) as "First, that the defendant traveled in interstate or foreign commerce; and Second, that defendant acted with the intent to engage in illicit sexual conduct" and

instructing as to the second element that, in relevant part, "[t]he term 'illicit sexual conduct' means [describe allegations in indictment, *e.g.*, a sexual act with a person who had reached the age of twelve years old but had not reached the age of sixteen years old, and who is at least four years younger than the defendant] . . .  The government does not have to prove that the defendant actually engaged in illicit sexual conduct, but must prove that he or she traveled with the intent to engage in such conduct. Direct proof of a person's intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated that as of a given time he committed an act with a particular intent. Such direct proof is not required. The ultimate fact of intent, though subjective, may be established by circumstantial evidence, based upon the defendant's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them."). Therefore, because the jury was properly instructed on the applicable law, including the requisite *mens rea* for the offenses of which Senke was convicted, and because Senke fails to demonstrate that the jury instruction prejudiced his defense, Senke's argument does not warrant a hearing or relief.

### D. Ground Four

Senke's final ground for relief first argues that Comerford failed to file a motion for dismissal of charges on the grounds that Agent Leri allegedly deleted text messages that would have been favorable to Senke's defense. (Doc. 231 at 6.) Senke alleges that "[t]ext

evidence was not preserved, including [an] exculpatory text indicating 'why would I want you when I have all this' (referring to the pictures sent by 'danny p.a. boy') sent right before Senke blocked the profile." (*Id.*) At trial, Senke's counsel referenced a number of his text messages in an attempt to prove that Senke was entrapped. (Day 1 Trial Tr. at 121:25-122:19; Day 2 Trial Tr. at 56:2-25.) Senke fails to state any specific facts as to how one or more text messages that he claims were deleted would have conceivably altered the outcome of the trial. Therefore, Senke does not establish sufficient prejudice and fails to meet *Strickland*'s second prong.

Senke also alleges that Comerford failed to file a motion for dismissal of charges on the basis that Agent Leri deleted a screenshot of his Gay.com profile. (Doc. 231 at 6-7.) This argument fails to meet either prong of the *Strickland* analysis. Although Agent Leri admitted to not keeping a screenshot of his Gay.com profile, there are no facts alleged by Senke, and nothing in the record to suggest, that the introduction of such a screenshot at trial could have altered the outcome of the trial in light of text messages from Senke demonstrating that he was aware that he was texting with someone he believed to be 14-years old and that he traveled to Scranton with the intent to have sex with that person (Day 1 Trial Tr. at 55:13-15, 58:25, 68:12-14, 79:10-11, 86:3-4.) Nor is there any evidence to suggest that the screenshot either induced Senke to pursue his efforts to create a sexual relationship with a person whom he believed to be a 14-year-old boy or deterred him from doing so and Defendant makes no such claim in support of his habeas petition. Therefore,

Senke fails to demonstrate prejudice under *Strickland* and his afore-stated arguments do not warrant a hearing or relief.

Finally, Senke makes a series of allegations relating to prosecutorial misconduct and Comerford's failure to obtain or present evidence relating to an "illegal interrogation" and an "illegal search of Senke's car," along with evidence that Senke was assaulted by police at the time of his arrest. (Doc. 231 at 7-8.) Each of these allegations can be dismissed on the basis that Senke fails to state any facts that would support a finding of prejudice under *Strickland*.

Senke does not offer any specific allegations of fact to support his claim that an illegal interrogation "in which it was 13 degrees and the police turned on the air conditioning and took Senke's winter coat as a torture tactic, all while remaining handcuffed" (Doc. 231 at 7) took place. There is no evidence in the record to suggest that this interrogation occurred in the manner now described by Senke or that there is any "film" of such an interrogation. Therefore, there is no indication that Comerford's failure to "obtain the film of the illegal interrogation" or to "present this evidence" at trial fell below an objective standard of reasonableness.  Furthermore, Senke does not set forth any facts or argument as to how an alleged failure to obtain footage of the interrogation would have altered the outcome of the trial in the face of compelling evidence of guilt.  The Government's case at trial did not remotely hinge on any statement made by the defendant during the interrogation.  Further, Senke's alleged statements made during the interrogation, testified to by Agent Leri at trial,

only confirmed that he had sent the text messages found on his phone, something Senke does not deny doing. Senke has thus not demonstrated any prejudice as a result of Comerford's alleged "refusal" to obtain footage of the interrogation or to present this footage at trial.

The record additionally shows that there was no unlawful search of Senke's car. Here, Agent Leri obtained a search warrant for the car on February 5, 2015. (Doc. 264-7.) Agent Nicole Whaley conducted a search of the car on the same day the warrant was issued. (*Id.*) Through that search and Agent Whaley's testimony, the jury learned that Senke was in possession of condoms and personal lubricant upon his arrival in Scranton on February 4, 2015. (Day 1 Trial Tr. at 151:1-25.) Senke also fails to state any facts or explain how exclusion of evidence of the condoms and personal lubricant would have altered the outcome of his trial, given that the text messages from Senke were the primary pieces of evidence used by the Government during trial.

Senke also claims that he was assaulted by police at the time of his arrest and that Comerford "refused to present the image of a bootprint on Senke's face and neck" and to use "information and documentation pertinent to the denial of medical care post-assault." (Doc. 231 at 8). Senke nonetheless fails to provide any support for his assertion that such an assault occurred or that, if it did, he was denied medical attention. Further, Senke does not present any argument as to how the presentation to the jury of the image at issue, if it

exists, or any denial of post-arrest medical care, would have altered the outcome of his trial

proceeding or caused him to suffer prejudice.

In sum, Senke fails to set forth any facts as to how an alleged illegal interrogation,

search of his car on a lawful warrant, or assault by police would have ultimately altered the

outcome of his trial. Therefore, because Senke has conclusively failed to allege facts

demonstrating prejudice under *Strickland*, a hearing and other relief is not required for these

allegations.

## V. Evidentiary Hearing

Section 2255(b) advises that "[u]nless the motion and the files and records of the

case conclusively show that the prisoner is entitled to no relief, the court shall cause notice

thereof to be served upon the United States Attorney, grant a prompt hearing thereon,

determine the issues and make findings of fact and conclusions of law with respect thereto."

28 U.S.C. § 2255(b).  "The decision to hold a hearing is wholly within the discretion of the

district court." *Eckenberger v. United States*, 2022 WL 609208, at *5 (M.D.Pa. March 1,

2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).  In this case,

no evidentiary hearing is necessary because "the motion and files and records of this case

show conclusively that the movant is not entitled to relief." *Eckenberger*, 2022 WL 609208,

at *5 (M.D.Pa. March 1, 2022) (internal quotations and citations omitted)); *see also Palmer

v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ("We have repeatedly emphasized that bald

assertions and conclusory allegations do not afford a sufficient ground for an evidentiary

hearing on a habeas petition"); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 300-02 (3d Cir.

1991) (declining to hold evidentiary hearing on petitioner's § 2255 ineffectiveness claim

"absent identification of some facts that support a contention of ineffectiveness" because

doing otherwise will encourage meritless petitions burdening judicial resources). Here,

Senke is not entitled to relief and his allegations rise only to the level of bare assertions that

are clearly contradicted by the record.

## VI. CERTIFICATE OF APPEALABILITY

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate

of appealability ["COA"]." *United States v. Bristol*, 2022 WL 2068048, at *8 (E.D.Pa. June 8,

2022) (citing 28 U.S.C. § 2253(c)(1)). The petitioner must make a "substantial showing of

the denial of a constitutional right" for the district court to issue a COA, which requires a

showing that "reasonable jurists would find the district court's assessment of [his]

constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2), *Slack v. McDaniel*, 529

U.S. 473, 484 (2000). In this case, a COA is not warranted on any of Senke's claims

because the Court finds that reasonable jurists would not find this Court's resolution of

Senke's constitutional claims debatable or wrong.

## VII. CONCLUSION

For the aforementioned reasons, the Court will deny Defendant Charles Senke's *pro se* 28 U.S.C. § 2255(a) Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 224).  A separate Order will follow.

Robert D. Mariani
United States District Judge